IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| Daniel KING,<br>   Plaintiff,<br><br>    v.<br><br>Judge Charles B. BURR, II et al.,<br>   Defendants, | CIVIL ACTION<br><br>NO. 2:17-cv-02315-MMB |
|---|---|

Baylson, J.                                        August 24, 2017

### MEMORANDUM RE: MOTION TO DISMISS

In this case, Plaintiff Daniel King ("King") alleges that his Fourteenth Amendment constitutional rights to due process and equal protection were violated by Defendants Judge Charles B. Burr ("Burr") and Riverwatch Condominium Owner's Association ("Riverwatch"), collectively "Defendants," when Judge Burr entered orders in an ongoing property damage litigation between King and Riverwatch. Presently before the Court is Defendants' Motion to Dismiss for lack of subject of matter jurisdiction under the Rooker-Feldman doctrine.[1]

For the reasons discussed below, the Rooker-Feldman doctrine deprives the Court of subject-matter jurisdiction over King's claims. Accordingly, Defendants' motion will be granted.

### I. Factual and Procedural History

The litigation on which the present case is based originated in 2008 as a result of an action in the Pennsylvania Court of Common Pleas of Delaware County before the Honorable Charles B. Burr initiated by King against Riverwatch. On June 21, 2010, Judge Burr entered

---

[1] After Defendants filed their Motion to Dismiss, Plaintiff moved to dismiss the Defendants' Motion. The disposition of Defendants' Motion to Dismiss renders Plaintiff's competing motion moot, but in any event, Plaintiff's motion is procedurally improper and legally nonsensical.

1

judgment in the matter in favor of Riverwatch on all of King's claims. (ECF No. 9, Am. Compl. ¶¶ 20; 22). On July 12, 2010, King appealed from the June 21, 2010 judgment based on his allegation that the judgment had been entered when Judge Burr did not have power of authority to exercise jurisdiction over the matter; the validity of Judge Burr's ruling was affirmed on appeal to the Commonwealth Court of Pennsylvania. (Am. Compl. ¶ 24; ECF No. 10, Def. Mot. I. ¶ 4). Two weeks later, on July 28, 2010, Judge Burr entered a dispositive order granting Riverwatch's preliminary objections and dismissing all post-verdict motions ("2010 order"). (Am. Compl. ¶ 27). King again appealed to the Commonwealth Court of Pennsylvania, and his appeal was denied once more. (ECF No. 11, Def. Mot. II ¶ 16).

Four years later, on February 21, 2014, Judge Burr conducted a bench trial that resulted in an assessment of $30,179.54 of attorney's fees due by King to Riverwatch. (Am. Compl. ¶ 41). King filed an appeal from the order granting Riverwatch's request for attorney's fees on March 20, 2014, arguing that the judgment was void because it was entered before post-trial motions were due. (Am. Compl. ¶¶ 42; 45). Judge Burr's determination was again affirmed on appeal. (Def. Mot. II ¶ 16). Thereafter, on April 1, 2014, Judge Burr entered a dispositive order dismissing King's post-trial motions ("2014 order"). (Am. Compl. ¶ 46). King appealed this disposition to the Commonwealth Court of Pennsylvania, which stayed his motion pending a ruling by the Pennsylvania Supreme Court. (Def. Mot. II ¶ 16).

King has filed approximately forty-eight appeals related to this litigation. (Def. Mot. II ¶ 15). The substance of his contentions in these appeals is that Judge Burr had been divested of jurisdiction, per Pennsylvania's jurisdictional statutes, at the time he entered the 2010 and 2014 orders, and therefore they must be declared null and void. (Am. Compl. ¶¶ 23-30; 42-49). In these appeals, as in the instant matter, King asserts that the enforcement of the 2010 and 2014

orders has deprived him of "liberty and property rights in violation of due process and equal protection." (Am. Compl. ¶ 29; 43).

King commenced his federal suit on May 22, 2017, seeking declaration of the invalidity of the 2010 and 2014 orders; injunctive relief prohibiting the enforcement of the 2010 and 2014 orders; and reasonable damages. (ECF 1). On June 12, 2017, Judge Burr filed a Motion to Dismiss based principally on the Court's lack of subject-matter jurisdiction, and also asserting alternative theories in support of dismissal. (ECF 7). King filed an Amended Complaint on June 20, 2017. (ECF 9). On June 26, 2017, Judge Burr moved to dismiss King's Amended Complaint on the same grounds. (ECF 10). On the same day, Riverwatch moved to dismiss King's Amended Complaint in a separate motion, echoing the lack of subject-matter jurisdiction based on the Rooker-Feldman doctrine. (ECF 11). On July 14, 2017, King filed a Response in Opposition to Defendants' Motion to Dismiss. (ECF 12). Three days later, on July 17, 2017, King filed a Motion to Dismiss the Defendants' Motion to Dismiss, asserting that dismissal of Defendants' motion was proper under the Rooker-Feldman doctrine. (ECF 13). Thereafter, on July 31, 2017, Defendants filed a Reply in further support of their Motion to Dismiss, emphasizing the impropriety of retaining jurisdiction over the matter when the Rooker-Feldman doctrine mandated dismissal. (ECF No. 14). Finally, King filed a Reply to Defendants' Answer to his Motion to Dismiss on August 17, 2017. (ECF 14).

II.   **Legal Standard**

In considering a motion to dismiss under Rule 12(b)(6), the court "must grant" the motion if it "lacks subject-matter jurisdiction to hear [the] claim." In re Schering Plough Corp. Intron/Temodar Consumer Class Action, 678 F.3d 235, 243 (3d Cir. 2012). A Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction may present either a facial or a factual

3

attack. CNA v. United States, 535 F.3d 132, 139 (3d Cir. 2008). A facial attack concerns "an alleged pleading deficiency," whereas a factual attack concerns "the actual failure of [a plaintiff's] claims to comport [factually] with the jurisdictional prerequisites." Id. (alteration in original) (internal quotation marks omitted).

Defendants' challenge here is factual, not facial, because the Motion challenges whether the district court has actual jurisdiction to hear the case. Id. The fact that the Rule 12(b)(1) motion makes a factual attack has three important procedural consequences for this Court: (1) "no presumption of truthfulness attaches to the allegations of the plaintiff"; (2) the plaintiff has the burden of proving subject matter jurisdiction; and (3) the court has the authority to review evidence outside the pleadings and make factual findings that are decisive to determining jurisdiction. Id. at 139, 145.

### III. Parties' Contentions

King seeks relief for alleged violations of his right to due process and equal protection, as guaranteed by the Fourteenth Amendment. In particular, King asserts that the 2010 and 2014 orders that Judge Burr entered are null and void because Judge Burr lacked jurisdiction over these matters, and therefore requests that this Court invalidate them.

Defendants move to dismiss under four independent theories: (1) that the Rooker-Feldman doctrine deprives the Court of subject-matter jurisdiction and therefore bars the suit; (2) that the relief King seeks is improper, because declaratory relief is not a remedy for past misconduct, and King has not satisfied the Article III requirements for standing to obtain injunctive relief; (3) that King's claims are barred by the two-year statute of limitations for personal injury actions, which is exceeded as to both of the orders for which King is seeking redress; and (4) that Judge Burr, individually, enjoys absolute immunity from King's claims

because he acted in his official judicial capacity and therefore is protected under the Eleventh Amendment. (Def. Mot. I at 3; 5; 9).

In King's Response to Defendants' Motion to Dismiss and his competing Motion to Dismiss, he reiterates the merits of the jurisdictional claims he presents in his Amended Complaint, which have already been considered and rejected by the Pennsylvania appellate courts. (ECF No. 12, Pl.'s Opp'n ¶ 5). Significantly, King does not contend that the instant suit is not barred by the Rooker-Feldman doctrine. In fact, King notes that the "Rooker-Feldman doctrine does apply to the Plaintiff's complaint." (ECF No. 13, Pl.'s Mot. ¶ 23). The closest King comes to addressing the merits of Defendants' argument for dismissal under the Rooker-Feldman doctrine is his assertion that there is no state-court judgment to consider because the 2010 and 2014 orders were void due to the fact that they were pronounced by a court that lacked proper jurisdiction. (Pl.'s Opp'n ¶ 12(d)).

## IV. Discussion

### A. Applicable Law

The Rooker-Feldman doctrine derives from 28 U.S.C. § 1257, which provides that "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court." Id. Importantly, while the Supreme Court of the United States retains jurisdiction to review decisions by the highest state courts, this jurisdiction does not extend to United States District Courts. See D.C. Court of Appeals v. Feldman, 460 U.S. 462, 476 (1983) (noting that the District of Columbia Circuit properly held that the federal district court lacked authority to consider final determinations of the District of Columbia Court of Appeals (the District of Columbia's equivalent of a state supreme court)). The Supreme Court has inferred that Congress's failure to confer a power of review on the

5

United States District Courts similar to the power of review conferred on the Supreme Court by § 1257 evidences an intent not to give this power of review over state court decisions to District Courts. Id. at 476; see also Desi's Pizza, Inc. v. City of Wilkes-Barre, 321 F.3d 411, 419 (3d Cir. 2003) ("Since Congress has never conferred a similar power of review on … District Courts, the Supreme Court has inferred that Congress did not intend to empower [them] to review state court decisions.").

The Rooker-Feldman doctrine operationalizes the "well-settled understanding [under § 1257] that the Supreme Court of the United States, and not the lower federal courts, has jurisdiction to review a state court decision." Parkview Assocs. P'ship v. City of Lebanon, 225 F.3d 321, 324 (3d Cir. 2000). Therefore, the Rooker-Feldman doctrine acts as a mechanism to ensure that "the lower federal courts may not sit in direct review of the decisions of a state tribunal" because this would contravene the Supreme Court's interpretation of Congress's purpose in not enacting an equivalent to § 1257 conferring power of review of state court decisions on the federal District Courts. Gulla v. N. Strabane Twp., 146 F.3d 168, 171 (3d Cir. 1998). The Rooker-Feldman doctrine imposes limits on § 1257, such that it will bar a claim in two circumstances: first, if the claim was "actually litigated" in state court before the federal action was filed; second, if the claim was "inextricably intertwined with [the] state adjudication." Desi's Pizza, 321 F.3d at 419 (quoting Parkview, 225 F.3d at 325).

In Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280 (2005), the Supreme Court held that the Rooker-Feldman doctrine is intended to apply in narrow circumstances, limited to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting district court review and rejection of those judgments." Id. at 284; see also Lance v. Dennis, 546 U.S.

6

459, 464 (2006) (reiterating that the Rooker-Feldman doctrine should be strictly confined to the specific contours outlined in Exxon-Mobil). In that case, the Supreme Court differentiated the Rooker-Feldman doctrine from preclusion, holding that because the defendant initiated its federal suit not to undo the state court judgment in its favor, but to "protect itself in the event it lost in state court on grounds (such as the state statute of limitations) that might not preclude relief in the federal venue," the Rooker-Feldman doctrine did not bar the district court from exercising subject-matter jurisdiction over the action. Exxon Mobil, 544 U.S. at 293-294.

Interpreting Exxon Mobil, the Third Circuit has identified four requirements that must be satisfied in order for Rooker-Feldman to apply: (1) the federal plaintiff lost in state court; (2) the plaintiff "complain[s] of injuries caused by [the] state-court judgments"; (3) those state-court judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments. Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 166 (3d Cir. 2010).

Here, element (1) is easily satisfied, because King indisputably lost in state court, since Judge Burr found in favor of Riverwatch in the original suit and ordered King to pay attorney's fees in the subsequent action. (Am. Compl. ¶¶ 27; 35; 41; 47). Similarly, element (3) is clearly met because the state court actions, which occurred in 2010 and 2014, respectively, occurred prior to the commencement of the instant suit on May 22, 2017. (ECF No. 1, Compl. at 1). Therefore, the question of whether the Rooker-Feldman doctrine bars King's suit turns on elements (2) and (4), which require both that King's injury be caused by the state-court judgment, and that King's claim invite the district court to review and reject the state judgments. Great Western, 615 F.3d at 166.

## B. Element Two: King's Injury Was Caused by State-Court Judgments

Satisfaction of element (2) of the Third Circuit's test for applying the Rooker-Feldman doctrine requires that the plaintiff's injury be caused by the state-court judgment. Id. at 166. Essentially, this element inquires into the source of the plaintiff's injury. See, e.g., Turner v. Crawford Square Apartments III, L.P., 449 F.3d 542, 547 (3d Cir. 2006) (correcting the district court's conclusion that the Rooker-Feldman doctrine barred the plaintiff's claim, because the source of her claim was the injury that resulted from the defendants' alleged violation of the federal Fair Housing Act ("FHA"), not the state-court judgment). In determining whether this element is met, "[a] useful guidepost is the timing of the injury, that is, whether the injury complained of in federal court existed prior to the state-court proceedings and thus could not have been "caused by" those proceedings." Great Western, 615 F.3d at 167; see also Turner, 449 F.3d at 547 (finding that the Rooker-Feldman doctrine was inapplicable, and noting that the plaintiff's injury was attributable to the defendants' FHA violations that "preceded the state-court judgment."). Here, it is clear that King's injuries derive directly from the state-court judgments issued by Judge Burr because his injuries do not predate the litigation between King and Riverwatch. Indeed, in King's own words, "this case involves disputes concerning … Judge Burr's orders or judgments and the enforcement thereof." (Am. Compl. ¶ 6). Therefore, the timing "useful guidepost" compels the conclusion that King's injuries were caused by the state-court judgments, and therefore element (2) is met.

Moreover, the conclusion that the instant suit fulfills the second element of the Rooker-Feldman doctrine is supported by a comparison of the present factual scenario to two different situations discussed in a precedential Third Circuit opinion illuminating when an injury derives from a state-court judgment, and when an injury does not. In Great Western, the court described

a scenario where a state court terminates a father's parental rights and orders the state to take custody of the father's son as an example of a situation where the state-court judgment directly caused the plaintiff's injury, in violation of the Rooker-Feldman doctrine. Great Western, 615 F.3d at 166-167. In contrast, a scenario where a plaintiff sues his employer in state-court for violations of state discrimination law and Title VII, and loses, but seeks to litigate the same suit in federal court is not barred by the Rooker-Feldman doctrine because the plaintiff is seeking redress for his employer's discrimination, *not* for an injury caused by the state-court judgment. Id. at 167.

The instant case is analogous to the former scenario, because the injuries that King complains of, *i.e.*, violations of his Fourteenth Amendment due process and equal protection guarantees, were caused by Judge Burr's determinations in the original litigation, just as the federal substantive due-process rights that the father sought to assert in the hypothetical scenario are based on the state-court custody decision. Therefore, because the injuries that King complains of derive from the state-court judgment issued by Judge Burr in the original litigation with Riverwatch, the second element of the Rooker-Feldman doctrine is fulfilled.

### C. Element Four: Exercising Jurisdiction Would Require the Court to Review and Reject the State-Court Judgments

Satisfaction of element (4) of the Rooker-Feldman doctrine requires a showing that evaluating the plaintiff's claim will invite the district court to review and reject the state-court judgments. Id. at 166. This element is closely related to element (2), and seeks to discern whether the plaintiff's suit requires the district court to conduct appellate review of the previous state-court decision. Nevada First Fed., LLC v. Macciocca, No. 15-1304, 2015 WL 4461828, at *4 (E.D. Pa. July 21, 2015) (Baylson, J). Prohibited appellate review occurs where the district court evaluates "the proceedings already conducted by the 'lower' tribunal to determine whether

9

it reached its result in accordance with law." Great Western, 615 F.3d at 169 (quoting Bolden v. City of Topeka, Ks., 441 F.3d 1129, 1143 (10th Cir.2006)).  Here, evaluating King's claims necessarily requires this Court to review the decision of the Pennsylvania appellate courts; in Plaintiff's own words, he is asking this Court to find in his favor based on the fact that "Judge Burr's entry of orders . . . facially violate the operation of the [Pennsylvania] jurisdictional statutes," an issue that was already taken up by the Pennsylvania courts.  (Am. Compl. ¶ 7).  This is precisely the type of appellate review of state-court decisions that the Rooker-Feldman doctrine contemplates and seeks to prevent.  See generally Rooker v. Fid. Tr. Co., 263 U.S. 413, 415-416 (1923) ("[I]t was the province and duty of the state courts to decide [the constitutional questions] … [i]f the decision was wrong, that did not make the judgment void, but merely left it open to reversal … Under the legislation of Congress, no court of the United States other than this court could entertain a proceeding to reverse); Feldman, 460 U.S. 462, 476 (1983) ("Review of [final determinations of the jurisdiction's highest court] can be obtained only in th[e] [Supreme] Court.").

If a federal plaintiff presents an independent claim, then the district court will not be reviewing and rejecting the state-court judgment, and therefore the Rooker-Feldman doctrine will not divest the district court of subject-matter jurisdiction.  Great Western, 615 F.3d at 166. In assessing whether a federal claim is independent such that it does not invite evaluation of the state-court judgment, the source of the injury is again relevant.  For example, in Great Western, the Third Circuit held that the Rooker-Feldman doctrine was not applicable because the plaintiff was asserting an independent claim, namely that people involved in the state-court decision violated the right to an impartial forum (a right that was wholly separate from the subsequent state-court decision).  Id. at 172; cf. Carroll v. Cty. of Chester Tax Claim Bureau, No. 11-4007,

10

2011 WL 3610458, at *4 (E.D. Pa. Aug. 17, 2011) (Baylson, J) (differentiating Great Western, where the federal claim was sufficiently independent from the state-court judgments so as not to implicate Rooker-Feldman, and concluding that the due process and just compensation rights that the plaintiff asserted were not independent from the state-court judgment). In contrast, here King's claims were already evaluated by the appropriate Pennsylvania appellate courts. By retaining jurisdiction, this Court would be reviewing and rejecting the judgments of these courts, in direct violation of the principle underlying Rooker-Feldman, as encapsulated by the fourth element of the doctrine.

Moreover, to the extent that King is basing his argument in support of the inapplicability of the Rooker-Feldman doctrine on the assertion that his claims are "independent" and therefore non-barred, this is unavailing because "presenting in federal court a legal theory not raised in state court . . . cannot insulate a federal plaintiff's suit from Rooker-Feldman if the federal suit nonetheless complains of injury from a state-court judgment and seeks to have the state-court judgment reversed." Schatten v. Weichert Realtors, Inc., 406 Fed. App'x 589, 593 (3d Cir. 2010) (quoting Hoblock v. Albany Cnty. Bd. of Elections, 422 F.3d 77, 86 (2d Cir. 2005)). As noted, King's due process and equal protection theories are not independent, and even if they are, his claims are based on injury from a state-court judgment for which he is seeking reversal, which is explicitly prohibited by the Rooker-Feldman doctrine.[2]

Finally, the fourth Rooker-Feldman element is not implicated just because a plaintiff attempts to litigate an issue that was previously decided in state court; satisfaction of this element requires that the plaintiff's claim invite legitimate "review and *reject[ion]*" of the state-court

---

[2] King himself notes that this "Court does not have the authority to review the merits of the state court decisions where the Plaintiff asserts an independent claim for due process and equal protection violations arising out of the state court's lack of jurisdiction over the matter." (Pl's Mot. ¶ 8).

11

judgments.  Great Western, 615 F.3d at 166 (emphasis added).  In Great Western, while the plaintiff's claim for damages may have invited "review of state-court judgments and even a conclusion that they were erroneous, those judgments would not have to be rejected or overruled for [the plaintiff] to prevail" and therefore the fourth requirement of the Rooker-Feldman doctrine was not met.  Id. at 173.  In contrast, granting King the injunctive relief and damages he seeks would contradict the numerous state-court judgments that found King's jurisdictional arguments unpersuasive, effectively rejecting and overruling these decisions in contravention of the Rooker-Feldman doctrine.  Accordingly, the fourth element of the Rooker-Feldman doctrine is satisfied.

Applying the Third Circuit's four-element test for the Rooker-Feldman doctrine articulated in Great Western plainly indicates that this Court lacks subject-matter jurisdiction over the case because all of the required elements are satisfied.  Therefore, dismissal of King's claims is proper.

**V.    Conclusion**

For the foregoing reasons, the Court finds that the four-element test for the Rooker-Feldman doctrine, articulated in Great Western, deprives it of subject-matter jurisdiction over King's claims.  Accordingly, Defendants' Motion to Dismiss is granted.

An appropriate order follows.

O:\Jessica.2016\17-cv-2315, King v. Burr\Memo Re Motion to Dismiss.docx

12